F. SNYDOR KIRKPATRICK *vs.* MARTHA E. LEWIS and Husband.

January 30, 1891.

**Foreclosure by Advertisement—Service of Notice on Occupant.—** The provision of Gen. St. 1878, *c.* 81, § 5, that on foreclosure by advertisement the copy of notice of sale "shall be served *in like manner* as summons in civil actions in the district court," has reference merely to the *mode* of making the service, and not to the persons *by whom* it may be made. The mortgagee himself may serve the notice.

ON REARGUMENT, MAY 12, 1891.

**Same—Form of Notice—Claim for Taxes.—**A notice of foreclosure sale under a power, after stating the amount then claimed to be due on the mortgage for principal and interest, stated that the mortgaged premises would be sold to pay said debt and interest, "and *the taxes, if any*, on said premises." *Held* good.

Appeal by defendants from a judgment of the district court for Ramsey county, where the action was tried by *Brill*, J.

*J. B. Brisbin, W. P. Warner,* and *Barr & Catlin,* for appellants.

*H. J. Horn* and *F. S. Kirkpatrick, (pro se,)* for respondent.

MITCHELL, J.[1] This was originally commenced as an action for partition, the plaintiff alleging that he was the owner of one undivided half, and the defendant Martha E. Lewis the owner of the other undivided half, of the lot in controversy; that said Lewis had executed a mortgage on her half to one Ransom, who had assigned it to plaintiff, who had foreclosed it under a power, and himself become the purchaser at the mortgage sale; also that the defendants were in possession of the whole property. The relief prayed for was that a partition be made, or, if it could not be made, that the property be sold, and all liens thereon be paid out of the proceeds, and the remainder thereof divided between the owners, according to their respective interests. When this action was commenced, the time for redemption from the foreclosure sale had not yet expired, as we understand the facts. In the mean time the time for redemption ex-

---

[1] Vanderburgh, J., took no part in this decision.

pired, and no redemption was made. Thereupon plaintiff interposed a supplemental complaint, alleging these facts and that he had thereby become the sole owner of the entire property, and demanding judgment for the possession. Thus what was originally an action for partition was turned into one in ejectment. In their answer, the defendants assailed the validity of the mortgage under which plaintiff claimed to have acquired title to Mrs. Lewis's half of the property; but on the trial they conceded that the mortgage was valid, but denied the validity of the foreclosure, or that plaintiff had acquired any title under it. The point is made by defendants that the plaintiff, by commencing an action in partition, asking for a sale of the property and a division of the proceeds after payment of liens, elected to waive his rights as purchaser at the foreclosure sale, and to resort to the partition sale to secure what was due him. Whatever there might have been in this point, if seasonably made, it has been waived, and is not now involved in this case. In the absence of anything in the record to show the contrary, we must assume that this action was changed from one in partition to one in ejectment, with defendants' consent. Some points are made as to the sufficiency of the notice of sale as well as of the proof of its publication; but these are so clearly unsubstantial that we do not feel called upon to discuss them.

The only important question in the case arises upon the sufficiency of the service of the copy of the notice of sale upon the defendant Martha E. Lewis, who, with her husband and codefendant, were in possession of and living on the premises as their place of residence. In form, the notice was clearly sufficient. It was addressed and directed to both defendants, and, under the evidence and findings of the court, it must be taken as true that this notice was served by plaintiff in person by leaving it at the house of Mrs. Lewis's usual abode with her husband, then resident therein, and at the same time telling him that it was a notice for Mrs. Lewis. That this was good service cannot be doubted, provided the mortgagee himself is, under the statute, a competent person to make it, and this presents the only question of any importance in the case. Gen. St. 1878, *c.* 81, § 5, provides that "such notice shall be served *in like manner* as summons in civil

actions in the district court." By reference to Gen. St. 1878, c. 66, we find that section 56 provides *by whom* summons in civil actions may be served, to wit, "by the sheriff of the county where the defendant is found, or by any other person *not a party to the action.*" Also that section 59 provides *how* and *on whom* they shall be served, to wit, "by delivering a copy thereof as follows:   *   *   *   *Fourth.* To the defendant personally, or by leaving a copy   *   *   *   at the house of his usual abode," etc. We are clearly of opinion that the words "in like manner," used in section 5, c. 81, refer only to the *mode* of service, and not to the persons *by whom* it may be made; and hence that the provisions of section 56, c. 66, have no application. Among the reasons, aside from the literal and natural meaning of the language used, that lead us to the conclusion are the following: Works on practice and codes of procedure, as does chapter 66 of our statutes, invariably treat of the questions *by whom* service may be made, and the *mode and manner* of making it, as distinct subjects, thus indicating a general understanding that the latter does not include the former. Moreover, it would require a very liberal construction of the words "party to the action" to make them applicable to a mortgagee selling under a power when the proceedings are wholly *in pais,* and not in any proper sense an action. Again, in the case of a summons, which is in the nature of original process in a judicial proceeding intended to result in a judgment which will be conclusive upon the parties, unless set aside by direct proceedings, and upon which final process may issue, there are manifest reasons why a party to the action should not be permitted to make service upon his adversary, which do not obtain with equal force in the case of a notice in foreclosure proceedings, which are wholly *in pais,* and where the affidavits of publication and service are merely *prima facie* evidence of the facts therein stated, and are always open to be impeached or contradicted. And as, in the absence of a statutory prohibition, a mere notice may be served by any one, even those interested in it, we think the notice in statutory foreclosure proceedings may be served by the mortgagee himself. It is to be regretted that this property should be lost to the defendants for so small a fraction of its value, but we see no way of avoiding the result. That there

should have been no attempt to save it by redemption seems, under the circumstances, almost unaccountable.

Judgment affirmed.

---

After the filing of the foregoing opinion, a reargument was asked for and granted, and was had at the April term, 1891; and the following opinion was filed May 12, 1891:

MITCHELL, J. The only question upon which a reargument of this case was granted was the sufficiency of the notice of sale as respects taxes upon the mortgaged premises. The notice, after stating the amount then claimed to be due on the mortgage, the names of the parties, the date of the mortgage, the time and place of record, and the description of the mortgaged premises, then states that, by virtue of a power of sale, the premises will be sold at public auction to the highest bidder, at a time and place specified, "to pay said debt and interest, *and the taxes, if any, on said premises,* and $25 attorney's fees, as stipulated in the mortgage, and the disbursements allowed by law." The statute requires that the notice shall specify, among other things, "the amount claimed to be due thereon, [the mortgage,] and taxes, if any, paid by the mortgagee at the date of the notice," (Gen. St. 1878, c. 81, § 5;) and the point made against this notice is that it does not specify the amount of taxes for the payment of which the land is to be sold. We do not construe this notice as claiming that anything was then due on the mortgage for taxes previously paid by the mortgagee, but, on the contrary, that the amount claimed as due was wholly for principal and interest. All we construe the notice to mean is that the proceeds of the sale, if sufficient, will be applied, so far as necessary, in payment of any taxes on the premises which may be due and payable at the date of the sale. If any taxes become due and payable after the date of the notice, and the mortgagee should, for the purpose of protecting his security, pay them before the day of sale, we think there can be no doubt but that, if the property brought enough, he might retain sufficient of the proceeds of sale to reimburse himself; or, if he concluded to allow the taxes to remain

unpaid, and, instead of selling the premises subject to them, (which would perhaps be implied in the absence of notice to the contrary,) he should give notice that the taxes would be paid out of the proceeds of sale, so that the purchaser would obtain a clear title, we do not suppose there could be any doubt of his right to do so. This, it seems to us, is practically what this notice meant; and the fact that the amount of such taxes is not stated is no more of an objection to the notice than is the fact that the amount of the costs and disbursements of sale is not stated. Looking at the matter in a practical, common-sense view, it is idle to claim that there is anything in this which would or could deter bidders. While usage cannot make good a notice which is clearly bad under the statute, yet it is a fact entitled to consideration that this form of notice has been in very common use in this state for years. Hence to hold it bad would invalidate a very large number of foreclosures, a result not to be lightly reached. The opinion heretofore filed is therefore adhered to.